I'll call the case of the United States of America v. Dante Jacobs. I am present in the courtroom at 6th and Market. My colleagues Judge McKee and Judge Ambrose are participating as most of the court has been doing for the past year by video and counsel are doing likewise. I thank everyone for accommodating us in that regard and for Greg Kane's enormous help throughout this sitting. In calling this matter Mr. Goldberger you may proceed. Good morning. May it please the court. My name is Peter Goldberger and it's my privilege this morning to represent the appellant Dante Jacobs who was the defendant below. I'd like to reserve two minutes for rebuttal. That is granted and Mr. Goldberger let me just say at the outset that of course we know that this case must go back for resentencing. The government has conceded that which leaves the three issues you have raised and for my interest in hearing argument on issues number two and three that is the issue regarding the instruction but in part that's because you have raised a considerable number of questions with respect to insufficiency and I think the panel is going to want to inquire quite a bit into that issue and necessarily into facts or evidence that has been presented and avenues perhaps that have been left open and I expect we'll spend a considerable time on that. So if you would proceed then. All right. I thought the court would actually want to discuss the Batson issue as well but and I'm prepared. I'll leave that you can follow the line I'm throwing you Mr. Goldberger or you can decline it but you'll find out from my colleagues what they want to ask. Plus what was the first argument you briefed? It was sufficiency wasn't it? Right and I well we could discuss technique some other time but when there's a good sufficiency argument I think it always belongs first because it's the greatest relief that would be granted so it's logically first in any case. With respect to the government's concession let me say that we do have a dispute about the scope of the remand. I don't know that they've fully conceded everything that I said about what ought to happen on remand with respect to the resentencing. With respect to the insufficiency the essence this concerns the but-for causation aspect of the aggravated offense. So the question is how could the government prove and in this case did they prove that the particular heroin which I can see that they did show was sold six days earlier by my client to Mr. Collins and then by Mr. Collins to the young woman who died Miss Alley was indeed the cause of her death. The principal weakness in the government's case has to do with the inadequate investigation by the Pennsylvania State Police of the crime scene evidence before the DEA got involved. Yes let's start there how about setting the scene by describing the area where Miss Alley was found dead and describing the evidence that was found there and collected. Yes well she apparently administered the fatal dose of heroin sitting on her bed and then fell when she went into shock and then died from the overdose and fell off the bed and so the first problem and this is not a police error of any kind with the kind of crime scene is that the 911 operator advised her boyfriend roommate to move the body twice understandably in an effort to revive her so that precisely where she fell and how she fell which might have been of great value to the police or the medical examiner in drawing conclusions that evidence was effectively destroyed by the Good Samaritan effort to to revive her first to put and to be more to be more specific the what could have been lost in that movement was her proximity to particular evidence that's correct and possibly even more possibly where her arm was extended to or or anything else yes that's right so that's the first thing this the second then is that the state police or the local police and the state lab chose to test well let me back up a step in the room there were three different kinds of heroin um two of which of the three were tested and one test of to the extent it was tested indicated no fentanyl so um and the the one that wasn't tested what we've called the the viking or skull marked heroin wasn't tested at all but is in a purse also within reach seemingly within reach of where the bag that was tested that came out of i'm not clear does it come out of the purse or it was on the floor it was on the trash can it was from the purse so they did not test anything from the trash can didn't test anything from the floor the floor being the most likely site i would think of the exact packet that was was it a purse or a shoulder bag i don't recall what kind of there are a lot of pictures there are two things okay it was a lot of pictures it was a full bag that was tested no residue from the right empty bags right nor from the syringe strangely how many syringes were in proximity sufficient proximity to suggest that was the syringe she used because probably there were a lot of syringes in there yeah i think the other syringes were in the purses i think there's only one on the floor okay i think i would give them that inference that that was the right syringe right and and weren't there also paper packets wax paper packets that contained some residue that were but not tested this isn't very well explained uh by the witnesses to those of us who are not experts are familiar with the way heroin is packaged and used but my i gather that it's it's a there's a wax packet with a small amount in a class in a small plastic bag and then there are a number of small plastic bags in a larger plastic bag that's like a sandwich size bag and then a number of those might be sold together at the same time in some other kind of packaging so it's a chinese doll's you know set of smaller but the smallest of those is the wax paper packet and that's the wax paper packet that has the brand name so to speak stamp on it um butter being the one that the government pointed to and that's the one that was that um my client sold and which the government claims instruction at all to the court as to to the to the jury as to how they should determine whether or not the sampling that was done gave a sufficiently reliable result to conclude to some level of certainty uh whether or not the cause of death came from the bulldog bags right and that's exactly the next point i was going to make i appreciate that question that um the next problem is the testing of one out of some 50 packets when the undisputed testimony of the government's expert is that the mixing is so uh inconsistent in the when the heroin is cut that you cannot extrapolate from one bag to the batch as a whole so the the government's own evidence defeats the inference of extrapolation that their case depends on so i thought i thought your argument was in the briefing was the lab tested only one of the nine seized butter bags right and did not test the residue in any of the viking bags that's correct and i i thought your argument then was that there's no evidence that jacobs ever sold the viking bags thus ali could have died from fentanyl in the viking bag alone yeah but i thought you she died from heroin is that correct no no no i'm sorry that was a misstatement the the the the um pathologist's testimony was that the immediate cause of death is fentanyl which is mixed with heroin i mean so the the addicted person is would say she's going to buy heroin i don't think they go to buy fentanyl fentanyl is a cut but it's particularly it's fentanyl is used to cut because it is less expensive to make and import and buy for the wholesalers so they dilute the heroin but it's particularly a deadly it's a particularly deadly substance it's not like cutting with caffeine right goldberger it's the fentanyl that causes death mr goldberger let let me approach this in a in a somewhat different uh focused way and that is uh to examine your position in light of what is a fundamental practice of putting together a prosecution and first conducting an investigation and that is that investigators and eventually prosecutors uh ought to be establishing a case eventually and preparing a case by excluding other possibilities which of course will have enormous implications and may hear for whether the standard of proof beyond a reasonable doubt can be met so if you would please um will you look at the case with that focus and that is examine what the investigators and the prosecution failed to exclude as a possible cause of death and which therefore might have stood in the way of a beyond a reasonable doubt determination sure um well they failed to exclude the bulldog um heroin by testing only one bag of it finding that that little bag that little packet didn't have any fentanyl in it and stopping there that's the extrapolation problem that i was just saying how many packets sorry how many bulldog packets was it was seven um i don't remember the number okay okay but certainly many you know and and if you're going to measure contained only heroin and not fentanyl is that right the one little packet that was tested but because of the extrapolation problem as explained by the dea uh witness i mean he didn't view it as an extrapolation problem but his testimony defeats the extrapolation assumption that the government's case depends on that is that when the heroin is cut it's not uniformly mixed so that you could literally have and he said this exactly in his testimony you could literally have a packet with no fentanyl in it and yet there was fentanyl in the batch now the government's argument is all the evidence that was presented all of this evidence was presented to the jury and they waited and they heard testimony about the viking bags being empty found in a closed shoulder bag uh they and the inference could be that you know she consumed the drugs in the viking bags a while ago and and not immediately before her death so what what's wrong with that argument well the way we framed it in the reply is that the disagreement here is between what's a reasonable inference and what speculation our petition is that that kind of argument by the inference um you can't just guess that the we can't put the jury in a position of just guessing and then on review call it an infer a reasonable inference by the jury there isn't evidence from which the jury could conclude um that she to focus on the way judge smith asked it didn't use the other heroin may i say the most important and interesting point here is that we have an addicted person who kept a lot of supply of various kinds that she had clearly bought in different places at hand um this is there's not be drawn wait wait a minute that's yes i thought that jacob supplied to collins collins supplied to ali and then a reasonable juror could concluded beyond a reasonable doubt that ali died of the fentanyl that jacob sold and if there was only one kind of heroin at hand in the apartment that would do it for the government but the key what the main thing we discover is from the search of the room is that this is a person who did not use up her heroin and then go find more this is someone who kept a supply on hand like a pantry in your kitchen um and so the fact that that the heroin that she most recently bought appeared to be the heroin traceable back to my client does not mean it's the heroin she used that night did the jury even have to determine that she kept this entire inventory couldn't the jury have believed that she had access to or shared an inventory with someone else in the home that doesn't hurt you that's true although the roommate testified i didn't think particularly credibly but i wasn't there to watch him that he was himself not a drug user but i i'm not accustomed to hearing you argue to credit the testimony of prosecution witness mr goldberger uh that's but we'll move on well no so are you mean the dea agent i mean it was no i mean i no absolutely not i am referring as i assumed you know you knew to mr cane the boyfriend yes that's right and i i have to say when i read that i rolled my eyes but uh that the jury could could have found that either way but in any event there was supply at hand whether it was hers whether she was the one who bought it whether he you know it was read it was at hand and certainly it would not have been reasonable for the jury to conclude that she didn't wasn't aware of it it was all right under and by her bed and in a purse the problem that i'm having is there was a close match between the butter bag tested near polly's body and the later butter bag seized from jacobs himself yes both those bags contain fentanyl sure sure and that if it wasn't for the other supply that was untested or inadequately tested that would that would have been it we wouldn't have had this argument at all but if the testimony we're not it's no part of our argument sorry but if the testimony was that everything that was used by ollie her sole source was colin's colin's sole source was jacobs that's the problem i'm having if you can you get me around that we don't know that the jury could not have concluded that that was her sole source it was her frequent source but there were two other kinds of heroin in the room at hand they had to come from somewhere i'm i'm looking at appendix 6 27 and 28 i thought the testimony revealed that jacobs was the exclusive supplier of drugs to collins and ollie was buying five bundles of heroin from collins every day so far as kane knew including the night before death so far as mr kane knew so he said but it's inconsistent with the physical evidence well he also testified on pages 5 30 to 31 and 562 to 63 that she exclusively bought heroin from collins what a competent witness could testify to that that's the hurdle i'm having they didn't call her the other friend as a witness um and no one who did testify would be competent to give that to to give you confidence that that's so she she died and we know that she free in the last year or so was frequently buying a couple of years i think frequently buying from collins most days but not every day and that there were two other kinds of heroin in her room by the bed all right let me again uh focus in a different manner which is in this case to ask you mr goldberger to place yourself in the position of the prosecution and tell the panel just how the government could have avoided uh the predicament that you're suggesting they're in here now what what more perhaps what little bit more could the government have done to remove the reasonable doubt that we necessarily would have to find here in our inquiry to justify setting aside the verdict well i've never been a prosecutor i'm not sure i can do that oh you're a good lawyer you're a good lawyer you're making the argument you can you i i think you can unless you want to decline to answer on the basis that might incriminate you a it i i would say at least they they should have tested a a sufficient number of packets from all three types of heroin and then presented evidence that this was a that there was a a scientifically valid basis to extrapolate what is this from what was sufficient number one and two i'm concerned that patrick was i don't know if they attempted to determine or not but he never testified who was the other person who and that was going to be exactly my next point is and the other patrick the the guy who was named but not called um would test presumably would testify because he's the one who according to the testimony took alley to meet dealers when cain wasn't present so it appears as though the biking was probably who knows but who knows biking may well have come via patrick and there's nothing to tie patrick to quite possible but i i think the insight that judge becker had in the guidelines case in the early 90s about extrapolation is absolutely applicable here the mccutchen i think the case right mccutchen is that if you're going to test less than all of a batch then you must that you the government must present some basis for the fact finder to reliably infer um the the an extrapolation to the untested portion i think that would be lacking here that would be a good place i think for uh ms cloud to begin but uh let me first ask if uh judge mckee and judge ambro have further questions uh with respect either to the insufficiency or sufficiency issue or the other two issues that have been uh raised here uh realizing we'll have mr goldberger back for um but but we can explore that with mr gober around well i've got so many questions the more i think about this the more questions i have about i have all day yeah we don't we don't i know judge ambro so so i've asked my questions for now so let me just conclude by saying that this what this gets us is a remand for the entry of a verdict on the left not a new trial but a verdict on the in the road case right so i uh yeah if we we're going to be sending it back for resentencing in any event but if we were to sustain your position with respect to insufficiency then the b1c component is out and uh there would be a you know a uh that's the b1c aggregate is out and so there would be a regular b1c i call it a component quibble over quibble over the characterization yeah it's from zero to 20 years available it would still be a 20 year maximum all right ms cloud your honor uh whitney cloud for the united states thank you so much for the honor of allowing me to appear the standard of review here plain error review of the evidence necessitates affirming the jury's verdict that appellant at least from my perspective that is maybe the i cannot tell you how much time i put into looking at standard review review was a plain error review differs qualitatively from reviewing for sufficiency of the evidence if there is a difference i can't find it so the the standard of reviews clearly helps you i mean really helps you tremendously here but i'm not sure it might get to the first base it sure as hell doesn't get your own plate as far as i'm concerned so help me understand how in a situation like this the prosecutor looking at this case and i'm not faulting you and i'm assuming given your status with the appellate unit that you were not the trial attorney but i couldn't imagine that an assistant just attorney doesn't walk into me saying getting on the phone and saying to the lab look at the syringe get me a quantitative analysis of what was in that syringe go back to the other butter bags get me and i don't know what the number would be but sample more of those butter sample the viking and sample the uh the bulldog and then let's talk about getting ready for trial and that wasn't done here we have syringes not looked at we don't know what bag was in closest proximity to her at the time of her death because the body as the chief said the body was moved twice the and to make it even worse the the bag that was analyzed wasn't where we would presume even though the baddie was moved the the body the heroin that she consumed last would be it was from a purse it wasn't from the floor or the top of the trash can the i mean the problems abound and it seems to me that what we're being asked to do is affirm based on rank speculation you the result the verdict is not illogical it's not illogical but it's i don't know how reasonable it is but but your honor uh if i can start with the last point and then i will try and uh so starting on the last point of the verdict not being illogical even under a harmless error review in united states versus caraballo rodriguez this court said that it's not going to overturn a jury verdict it's not going to reweigh the evidence if there are other possible inferences or other even plausible inferences so long as the jury's conclusion is not irrational so that does play a stance of an important part here now if i can go through and your honor started with talking about not testing the syringe and uh alleged inadequacies and your honor uh first of all the defendant stipulated to the testing in this case he stipulated uh to the methods yeah the method of the test that was done but he clearly did not test where i read the stipulation the stipulation is not so broad as to concede that there is a scientifically valid conclusion that can be drawn from the whole by testing the one bag from the purse but some of that additional basis can be inferred and i believe was inferred by the jury given the pattern here so we have three three principal facts that make the butter stamped heroin the most likely and beyond reasonable doubt the most likely heroin that killed uh teresa or fentanyl that killed teresa alley that is one the chain of distribution i believe judge ambrose mentioned this um the chain of distribution was very clear from from dante jacobs to jonathan collins to teresa alley that's where she got her heroin consistently day after day that's where she got her butter heroin well and that that's your honor my second point the butter stamp heroin she bought jonathan collins testified she bought this heroin the night before her death she had a habit of buying five bundles of heroin a day one bundle and she would use one bundle at a time one bundle was used that bundle that was used was the butter stamped heroin she testified that she helped me with that because she was she didn't testify at all oh no your honor i i didn't uh i apologize if i misspoke i said jonathan i thought i meant uh jonathan collins testified that she bought the butter stamped heroin from him so she bought that on the which butter stamp did she buy did she buy all of from him the butter on the floor the butter on the trash can the butter in the purse because that would give an amount much greater that would be established by any testimony that she would buy from him in a single visit your honor i believe the testimony was that she bought five bundles of heroin a day there were four bundles that were unused of the butter stamped heroin in the purse nearby one bundle had been used and the little baggies within the bundle um i believe mr goldberger referenced it as a you know a nesting doll right so the the wax paper baggies that have been used somewhere on the floor many were on the trash can right next to her body so that is a that is a strong inference for the jury to take and then further the butter stamp do we know what was in there do we do we know if fentanyl was in we know that fentanyl was in at least the one baggie that was tested from from that scene as well as uh your honor from the purse yes you know if there was any fentanyl in the trash in the drugs that you're describing here from the top of the trash can the bags sitting on the floor or the syringe well we can assume it from the syringe there was probably fentanyl in there your honor in terms of the feasibility of testing baggies in which um the heroin has already been extracted and used um i'm not sure there was robust testimony on the feasibility of that because again it wasn't challenged um so uh i i can't i don't think i can point you to the record to any examination from either side you're saying you didn't necessarily have to establish an element because there wasn't a challenge to the existence of that element i think i think um what i'd uh what i would characterize what i'm saying is that there are multiple ways of proving something obviously i think in our in our modern society and with scientific methods um testing is incredibly helpful you just said something which is very significant scientific method was there any testimony to the jury of any instruction to the jury about what quantity of sampling would be sufficient to allow them to conclude with some degree of certainty and i won't put reason without and there are mathematical certainty some degree of certainty that the fentanyl that was seized from the uh was extrapolated from the one bag that was tested established sufficient probability that that came from her when she purchased from collins was there any testimony of that sort your honor if you're um whether there was any i i think i might have misunderstood the question i didn't ask it very hard for that's not your fault i didn't ask it very well my concern your honor thank you and then maybe you can extrapolate a question from my concern because i really do not do a good job of asking it my concern is you've got a lay jury here and you're asking them to conclude based upon one sample that was drawn from a scene that contained other heroin that can't be tied to collins you're asking them to conclude that the fentanyl that there are other bags at the scene that you can tie to collins but there are bags on the scene you can't tie to collins we don't know how many of the bags that came from collins had fentanyl maybe um all of them did maybe 50 did maybe 25 did um maybe all the biking bags had fentanyl maybe all the um bulldog bags had fentanyl since we get into a point where the you're asking the rank speculation and when i said it was logical it's logical only because the speculation arises from some testimony in the record but whether or not that testimony in the record is sufficient to support an inference um that that it just seems to me that you're asking the us to sustain a a verdict based upon maybe the sloppiest um investigation i've seen in terms of drug work and i've had 10 charges for 10 years maybe five of those i presided over trials three of them were homicide trials and i signed a daily base maybe not the best uh police work in terms of how you prove a drug case uh wasn't it the colombo standard that's for darn sure this would even be something judge mckee has judge mckee has just captured uh what i was trying to get at with my question about excluding other possibilities uh and uh i was a prosecutor and i was a trial judge and so i'm trying to understand why uh not necessarily the prosecution but the investigators and uh of course the lab or labs were not attempting to exclude as well by conducting tests on the other substances found at the scene your honor i um without placing myself exactly back in that spot um i think the evidence uh this may not be satisfying but the evidence of this inference this chain of inferences of dante jacobs distributing the heroin to jonathan collins who distributes it to theresa alley that that habit that she had the fact that the butter stamped heroin was was purchased the night before was used uh was so strong that uh the how strong was it because there was no quantitative analysis done we don't know how strong it was the fentanyl was sufficiently strong enough to be fatal we don't know how much the fentanyl she and let me just add to that that recorded calls between collins and jacobs reveal that jacobs thought that the butter bags did not contain fentanyl and so if she died of fentanyl it might i mean if jacobs was right what overcomes that at trial your honor i think those recorded calls if i could start with that point that i think the recorded calls actually show a dialogue in which uh jacobs is acknowledging that the drugs that he's distributing are dangerous because um i think the quote was all drugs are daily on it every day if she died of fentanyl and he he jacobs tells collins that he didn't think that his butter bags contained fentanyl then wouldn't that indicate something other than the butter bags may have killed miss ollie in her overdose again because jacobs didn't himself fill fill the butter bags um i and i i don't think anybody disputes that um jacobs can't know for certain what is in those butter bags it's a risk that he's taking in distributing these drugs he knows that some of the drugs he distributes do contain fentanyl he acknowledges that people die from uh overdoses off of these types of drugs every day um i think that some of the drugs he distributes contain fentanyl um your honor if i can just find the page you might want to take a look at appendix 116 and if not you can do a 28 j letter in okay thank you your honor i i think a fair a fair reading of that uh or a fair interpretation of uh that discussion between mr jacobs and mr collins is um that they're debating uh they're talking about the potency of various drugs uh mr jacobs might have expressed some surprise um about the uh about the butter but they're acknowledging that the butter was good that the butter butter had people um wanting wanting more and also that uh that the presence of fentanyl can can cause people to come back for the drugs time after time wait so the cocaine can do that the presence of cough syrup can do that the presence that's the nature of addiction any drug that's addictive alcohol can do that wine can do that that that doesn't help you uh and maybe you just spoke inartfully there but that certainly the fact that this is a drug that caused people to come back from time time after time i i don't know where that gets you your honor um so if i if i may return to um something your honors have been touching on uh in terms of where uh the the testing itself um your honor certainly um more testing can be done um and uh that is a uh critique i will certainly take back but when we're talking about a stipulation that does not channel to testing a uh a plain air review that doesn't put before the jury um the the same arguments that appellant counsel is bringing up before the court um once again the standard becomes really really important in terms of um the other possibilities that your honors are pointing out from other drugs that might have killed theresa alley which i would argue are not even the most likely drugs to have killed theresa alley um they have to fall to the wayside for the jury verdict who were properly presented evidence they could draw the inferences they wanted to and they drew this inference okay you're back you're back to your first argument i mean it's yes you know and you're saying you know was there an error was it plain you're saying somehow it wasn't plain but if there was an error and it was plain it could have affected what happened here but you're going to have to get into the weeds here with us in order to show that the fairly low bar of sufficiency of the evidence uh was met and what would you what would you say in 25 words or less would be the reason that that threshold was met your honor the threshold was met because the butter stamped heroin at the scene contained fentanyl the butter stamped heroin acquired several days later contained fentanyl fentanyl killed theresa alley theresa alley acquired her acquired his drugs from dante jacobs that makes dante jacobs a but-for cause of theresa alley's death yeah which which leaves us with as uh as was suggested by judge mckee a logical chain and therefore a chain that certainly would have no difficulty passing the low hurdle of preponderance of the evidence but we remain stuck on as we must be the question of whether or not it meets the beyond a reasonable doubt standard that's what we're left with and your honor i think and if and if and if evidence found at the scene sufficiently proximate to the body of miss alley was found by the investigators inventoried by the investigators but some of it not tested that also logically leaves open the possibility that those packages those drugs contained fentanyl as well why does that not raise a reasonable doubt because your honor we're talking about possibilities not probabilities and the why aren't we talking about probabilities given let's talk about probabilities and believe me when it comes to math my inability to grasp math i'm convinced killed mrs casey who was my eighth grade that's why we're all we're all lawyers your honor yes died at the age of 80 but i know it's because of me um you got all these bags is that what i have to look forward to judge mckee thank you thank you for the warning yes that's it brooks that's it that's what's ahead of you uh all these bags you sample one you don't even sample it quantitatively so we speaking now about probabilities there's no way of knowing whether or not the bag that was sampled had enough fentanyl in it to be a lethal dose given her body weight and everything else so you don't that doesn't get you very far given the fact that one bag out of 52 butter bags have been sampled none of the biking bags have been sampled none of the um bulldog bags i think were sampled and the bag that was sampled was not in closest proximity to her it was in her purse not student about the four war one might assume that she would be consuming it given what you said about scientific whatever you said i don't know i don't even know if that gets you there your honor um the the ability to test uh for um concentrations of the drugs um is a is a more recent phenomenon but we've held we've held defendants accountable uh for years for distributing drugs that result in death on on the basis of this with regards to me show me a case where you have this especially focusing on mccutcheon what we said in mccutcheon and that wasn't even a reasonable doubt case that was a case where the issue was whether or not there was a sufficient reliability of the weight of the substance to justify going beyond five grams i think it was of of heroin and and we said look the judge has got to make a determination that the method of sampling is sufficiently reliable to justify the increased sentence that was not reasonable doubt but in mccutcheon go ahead your honor in mccutcheon um i believe the sampling was itself challenged at sentencing and that's where the the court then um announced that when when when something is challenged the judge does have to make certain findings but here it wasn't challenged in fact you're saying they don't they don't you don't have to prove the elements of the offense unless they challenge is that what you're saying unless they stand up and say specifically that this is not sufficient to tie the drugs to um my client and granted they should have done that and we know mr goldberger didn't try the case that he tried it we wouldn't have this problem um but that's what you're saying that i'm looking at the record now you're we've gone from saying that you got to rely upon plain air review and sufficient evidence and now you're saying well they didn't really challenge it before and you're not suggesting the weight of the argument are you or maybe you are the weight weight of the argument uh i mean your honor uh this this argument about testing um was not was never put before the district court there was no opportunity to have an instruction to um to really put this argument before the jury about whether the the testing was told they got to find beyond the reasonable doubt and it seems to me a judge and telling a jury beyond the reasonable doubt i couldn't imagine a charging a jury in a case like this where you don't give the jury some information to determine whether or not they think that the sampling that's been done is sufficient to allow them to convict somebody beyond a reasonable doubt it wasn't done here and i don't want to be too critical of you miss claudette you know your honor this is all this is all completely fair game um but again i i think we just take a different view because we believe the sampling um the the fact that the butter stamped heroin came back as positive for fentanyl both times was you know to put it crassly icing on the cake in terms of the evidence demonstrating that this butter stamped heroin distributed by dante jacobs killed teresa out judge mckee judge mckee judge ambrose do you have further questions of miss cloud and certainly we we can continue if you do uh no no i don't i don't want to be a dead horse i would just suggest to miss cloud clearly you sense our concern and if you could just take back to your office um this is really whether or not it's legally sufficient at least in my mind it seems clearly unacceptable and there's no excuse for it and it can easily be avoided um these were state officers they weren't federal officers but uh trial attorneys in your office can avoid this kind of thing by just making sure when you go to trial you got a better job that's done by this this is just your honor i will thank you thank you thank you miss cloud very much mr goldberger you have rebuttal thank you your honor and um before i turn directly to the sufficiency rebuttal i just would like to encourage the court to look at the record on the batson issue because i do think it raises quite profoundly we we have all we have all read we have all read and i can speak at least for myself i've read the entire batson trance or the entire jury selection not with respect to only to the two jurors raised but from from top to bottom from beginning to end very careful review part of the problem there is the very nature of perimetries i mean the guys who died here you know arguably we read that this guy probably died he said the night before to get out of jury service but you know but that's not what we want to go with you right now all right okay um let me just say then very briefly i won't use my whole two minutes at all that the it is this let me start with the stipulation as as the focus of what miss cloud is saying that um the defense stipulated that the methods were valid the method is gas chromatography and and there's nothing wrong with that but it is not on the defense lawyer or on the defense side in general in a criminal case to point out the weaknesses in the government's case and help them uh to prove to fill the holes before they rest their case it's quite the opposite and so this is not about jury instructions these are about logical holes in the government's case that resulted from and i think we've heard this implicitly resulted from jumping to a conclusion of guilt too fast this is the kind of thinking that results in wrongful convictions and i'm not saying this is a wrongful conviction case but it's the same fallacy is not looking open-mindedly at all the evidence and uh building a case that excludes reasonable doubt um here the uh there were too many other distinct possibilities um that were not uh available just to resolve with inferences yes there's a chain of distribution that's not the problem but the question is whether that drug that was down the chain is the drug that killed miss alley and that they did not prove beyond a reasonable doubt so we um leave it to you to uh and suggest that a reversal as we've discussed for the last 40 minutes is called for here thank you very much mr goldberger and thank you very much miss cloud as you can both see this is a case that raises serious questions in the minds of all three aspect of this not to mention uh the complete nature or lack thereof of the lab work will take all of that into consideration in taking the case under advisement thank you very much this matter is concluded